HOUCK & DIETER v. ANHEUSER–BUSCH BREWING ASSOCIATION.

No. 255.

1. **Illegal Combination—Anti-Trust Law.**
   See contract held to show on its face a combination prohibited by the act defining trusts, approved March 30, 1889 ............................... 189

2. **Anti-Trust Law.**
   Said Act of March 30, 1889, is not in violation of the Constitution ......... 190

3. **Illegal Contract.**
   Parties can not recover damages for breach of a contract in aid of a combination illegal in its purpose. See example ............................. 190

4. **Sale of Goods which May Be Applied to Illegal Purpose.**
   The vendor of goods to *a combine* in violation of the anti-trust law, knowing of the illegal combination and the use to be made by the purchasers, can not recover for the value of such goods .......... .. ................. 190

5. **Same.**
   If, however, the seller did not know nor is charged with knowledge of such illegal use by purchaser, he can recover...... ...................... 190

ERROR to Court of Civil Appeals for Fourth District, in an appeal from El Paso County. Justice Neill, of Court of Civil Appeals, did not sit in this case.

The Anheuser-Busch Brewing Association, defendant in error, and plaintiff below, a foreign corporation domiciled at St. Louis, Mo., brought this suit in District Court of El Paso County, December 29, 1890, against A. L. Houck and J. P. Dieter, partners, under the name and style of Houck & Dieter, appellees in this court, but defendants in the court below. The suit was to recover the sum of $1569.38 bal-

ance due on two verified accounts for beer sold by the plaintiff to defendants, and money advanced. Of the amount sued for, $1047 was represented by defendants' two acceptances in favor of plaintiff.

Defendants (appellees) on the 12th of May, 1892, filed their first amended original answer, wherein they pleaded: 1. General demurrer. 2. General denial. 3. A plea in reconvention, wherein they averred, that the beer for the value of which plaintiff sued was sold by plaintiff to defendants in accordance with an express contract by and between plaintiff and defendants, by the terms of which defendants were to have, for the year beginning April 28, 1890, the exclusive privilege of selling by wholesale in El Paso, in El Paso County, Texas, the keg beer manufactured by plaintiff, and that plaintiff had been guilty of a breach of this contract; that thereby defendants by such breach had been damaged in the sum of $21,000 for which they prayed judgment. 4. A plea in reconvention, wherein they set up identically the same cause of action as that described in number 3, excepting only that the contract averred to have been broken was charged to be implied, and not express.

On February 2, 1893, plaintiff replied by amended supplemental petition, wherein it demurred generally and specially, and further pleaded special matter of defense as against defendants' plea in reconvention, the substance of which was, that the contract pleaded in reconvention by defendants was in aid of a pool or trust formed by defendants and others to enable them to control the beer market in El Paso County, Texas, and hence was void, as being against public policy. On the same day, February 2, 1893, defendants filed their first supplemental answer, wherein they denied the existence of the unlawful pool or trust asserted by plaintiff in its amended supplemental petition to have been formed by them, and further averred, that even if defendants were members of such a pool or trust—which defendants denied—plaintiff was aware of its existence, and so knowing and intending to aid and assist said pool or trust to accomplish its unlawful purpose, sold to defendants the goods for the value of which it instituted this suit, and therefore, that plaintiff was not entitled to recover the value of such goods. On the same day, February 2, 1893, the case came on for trial. Plaintiff's demurrers were presented and overruled; defendants admitted that plaintiff had a good cause of action as set forth in its pleadings, except so far as it might be defeated in whole or in part by the facts of their answer constituting a defense. Thereupon the court gave defendants the right to open and close. The case was then tried upon its merits before a jury, and resulted in a verdict for defendants on their plea in reconvention for the sum of $3458.50 over and above plaintiff's demand. Thereupon judgment was rendered in favor of defendants against plaintiff for $3458.50 and costs of suit. The plaintiff appealed.

This judgment was reversed on appeal, by the Court of Civil Appeals. The contract of March 19, 1890, entered into by the defendants

Houck & Dieter, with Schloss & Howley, denounced as an illegal combination under the anti-trust law of March 30, 1889, is here given:

"STATE OF TEXAS, }
"County of El Paso. }

"This agreement, made and entered into this day, between J. P. Dieter, of said El Paso County, acting for himself and for the firm of Houck & Dieter, composed of the partners, A. L. Houck, of Wichita, Kansas, and J. P. Dieter; and A. Schloss and E. B. Howley, each of said El Paso County, witnesseth:

"That said parties hereby associate themselves together for the purpose of forming a copartnership, under the following terms and conditions, to wit:

"1.  This copartnership shall be known by the firm name and style of El Paso Lager Beer Company, and its principal office shall be located in the city of El Paso, said El Paso County, Texas; and this copartnership shall continue for the full term of five years from the first day of April, 1890, and shall not be dissolved before the end of that period, except by the consent of all the parties hereto.

"2.  The object and purpose of this copartnership is to sell lager beer in the city of El Paso, Texas, and in all other markets tributary to said city, and each party hereto binds himself to put all the beer he or they may handle or control into this copartnership, under the terms and limitations hereinafter set forth.

"3.  The capital stock of this copartnership shall consist of the following property, to wit: One two-horse beer wagon, two horses and harness therefor, put in by Houck & Dieter; one two-horse beer wagon, two horses and harness therefor, put in by A. Schloss; and one one-horse beer wagon, one horse and harness therefor, put in by E. B. Howley; also the beer furnished by each of the parties hereto; and said company shall handle no beer except furnished by us; and we, said partners, shall furnish the beer put into the business, in the following proportions, to wit: Houck & Dieter, twelve-twentieths (12-20) of the whole; A. Schloss, five-twentieths (5-20) of the whole, and E. B. Howley, three-twentieths (3-20) of the whole; and said beer shall be furnished by each of said parties at a cost of $2.60, f. o. b., at railroad depot in the city of El Paso, Texas.

"This cost price is based on the present rate of freight to the city of El Paso, and shall fluctuate higher or lower in exact proportion as said freight rate may be higher or lower than at the present rate. All bottled beer handled by each of the parties hereto is to be put into this copartnership at net cost, provided that bottled beer shall be furnished by each party hereto in such quantities only as there may be a market for the same, and shall be paid for by the company when invoice for the same becomes due.

"4.  The company shall pay to the party furnishing same cash for each car load of beer delivered to it by said party after deducting the

freight which the company shall have advanced on the car load, and the company shall pay all freight on shipments of beer and empty kegs, and all cooperage and other expenses.

"5.  Said J. P. Dieter shall be the manager of the entire business of the copartnership, subject only to the direction of executive board, provided for in article 6 hereof.  The manager alone shall have power to make all contracts, sign checks, or in any way use the firm's name, and he shall have general control and management of the affairs of the company, subject to the direction of the executive board.  He shall keep, or cause to be kept, correct minutes of the proceedings of the executive board, and also all proper and necessary account books, showing accurately the business transactions of this copartnership, and same shall at all times during business hours be subject to the inspection of each party hereto.

"6.  The executive board shall consist of J. P. Dieter, A. Schloss, and E. B. Howley, and said board shall meet at the office of the company twice a week on days to be fixed by the board, and a record shall be kept of all its proceedings.  The manager shall preside at all meetings, and a quorum shall consist of all three members for the transaction of any business, unless at a previous meeting leave of absence has been granted by the unanimous vote of the board, in which event two shall be a quorum.  All questions shall be decided by a majority vote, except granting leave of absence and appointment of substitutes as hereinafter provided; and if at any meeting a quorum shall not be present, he or they present shall adjourn from day to day to the same hour until a quorum is obtained.  In the event that either member of the board desires to be absent, or cease to give his personal attention to business, a substitute may be appointed for said party only by the unanimous consent of a full board, and said substitute shall be vested with such powers and rights and required to perform such duties as may be prescribed in his appointment.

"7.  Said J. P. Dieter, A. Schloss, and E. B. Howley shall give their active attention to the conduct and management and success of the business, and out of the profits are to be paid the following salaries, to wit, J. P. Dieter $2000, and A. Schloss and E. B. Howley $1200 each; said salaries to be paid monthly at the end of each month.  The executive board may grant leaves of absence on such terms as to loss of salary and expense money as it thinks best, and absence or neglect of the business without leave of the board for thirty days or longer shall forfeit salary during such absence or neglect.  In addition to the above salary, there shall be allowed to the member hereof who is authorized to collect the bills and accounts due the firm, a commission of 1 per cent of the amounts collected, which shall be expended by said member for the benefit of and for the trade.  E. B. Howley and A. Schloss are each to have $50 per month and J. P. Dieter $75 per month in addition to their salaries, and all of said allowances are to be expended with and for the benefit of the trade, and if any member shall draw

more than the amount specified, said amounts so drawn over shall be deducted from the salary of or profits accruing to said member.

. "8. In the event that by any accident any one or more of the horses put in as per article 3 shall be disabled from use while being used in the service of the company, the company will pay to the party putting in said horse, compensation therefor, at the value that may be fixed by the executive board.

"9. The net profits of the business, after deducting the salaries provided for in article 7, shall be ascertained and divided at the end of each month, and shall be then paid to the parties hereto, as follows: To Houck & Dieter twelve-twentieths (12-20), to A. Schloss five-twentieths (5-20), and to E. B. Howley three-twentieths (3-20).

"10. Each of the parties hereto shall execute a bond in the sum of $1000, with sureties, to be approved by the executive board, payable to the other parties hereto, conditioned that said party will carry out in good faith the undertakings made in this instrument, and said bonds shall inure to the benefit of any member hereof who may be damaged by a breach of said conditions.

"Witness our hands, this the 19th day of March, 1890.

"HOUCK & DIETER,
"Witnessed:                               "J. P. DIETER,
        "PEYTON F. EDWARDS,          .     "A. SCHLOSS,   .
        "A. S. BLACKBURN.                  "E. B. HOWLEY."

Among other things, the plaintiffs in error in the petition for writ of error complained, that the Court of Civil Appeals erred in holding that said contract, of date March 19, 1890, was void, as being in violation of the provisions of said Act of March 30, 1889, when said act is itself in violation of the fourteenth amendment of the Constitution of the United States; because it denies them equal protection under the law with the raisers of live stock and the producers of agricultural products, and said act is further in violation of section 3, article 1, of the Constitution of the State of Texas, and confers exclusive privileges on the raisers of live stock and producers of agricultural products."

*W. M. Coldwell, Edwards & Neill,* and *Hague, Falvey & Davis,* for plaintiffs in error.—1. A manufacturer may lawfully contract to sell during a limited time his product to one person or firm only in a particular city or district; such contracts are not in restraint of trade, and the court did not err in overruling appellant's demurrer, based upon the supposition that they are. Watkins v. Morely, 2 Ct. App. C. C., secs. 723–728; Welsh v. Morris, 81 Texas, 159; Clark v. Pierce, 37 Vt., 187; Roller v. Ott, 14 Kan., 609; Live Stock Assn. v. Levy, 54 N. Y., 32; Newell v. Myendorf, 23 Pac. Rep., 333.

2. Whether or not appellees were members of a trust or pool in violation of law and public policy, was a mixed question of law and

of fact; and having been properly submitted to the jury under correct instructions as to the law, and the jury having found against the existence of such illegal trust or pool, and their verdict being supported by the weight of the testimony, their verdict should not be disturbed by the appellate court.   Seeligson v. Lewis, 65 Texas, 216; Ladd v. Cotton Press and Mfg. Co., 53 Texas, 172; Oil Co. v. Adoue, 83 Texas, 650; Welsh v. Morris, 81 Texas, 159; Benj. on Sales, sec. 512; 1 Lind. on Part., 2 Am. ed., secs. 91, 92; Dolf v. Machine Co., 28 Fed. Rep., 553; Sharp v. Whiteside, 19 Fed. Rep., 157; Match Co. v. Roeber, 13 N. E. Rep., 419; Roller Co. v. Cushman, 9 N. E. Rep., 629; Glue Co. v. Cement Co., 27 N. E. Rep., 1005; Fairbank v. Leary, 40 Wis., 637.

*Davis, Beall & Kemp,* for defendant in error.—The evidence established the fact, that on or about the 19th of March, 1890, the defendants entered into a pool, combination, and conspiracy, with A. Schloss and E. B. Howley, to control the sale of keg or bulk beer in the market of El Paso, Texas, and its prices, and to stifle competition therein, both as between themselves and others, to an extent not permitted by law; that if in truth and in fact defendants had and made with plaintiff the contract or understanding pleaded in reconvention, the same was had or made in aid and furtherance of their unlawful objects in so entering into such pool, combination, and conspiracy with said A. Schloss and E. B. Howley, and was in contravention of public policy, the statutes of Texas relating to trusts and conspiracies against trade, and was illegal and void, and nonenforceable in law.   Const. 1876, art. 1, sec. 26; Laws 21st Leg. (1889), chap. 117; City of Brenham v. Water Co., 67 Texas, 561; Oil Co. v. Adoue, 19 S. W. Rep., 276; 1 W. & W., secs. 1243, 1244; Railway v. The State, 72 Texas, 408; Slaughterhouse cases, 83 U. S., 36; Oregon S. N. Co. v. Winsor, 87 U. S., 64–72; Anderson's Law Dic., p. 1062; Craft v. McConoughy, 79 Ill., 350; Salt Co. v. Guthrie, 35 Ohio St., 672; Fairbank v. Leary, 40 Wis., 642; Lovejoy v. Michels (Mich.), 13 Law. Rep. Ann., 770; Richardson v. Buhl (Mich.), 6 Law. Rep. Ann., 464; The People v. Railway (N. Y.), 2 Law. Rep. Ann., 33; Hooker & Woodard v. Vandewater, 4 Denio, 349; Stanton v. Allen, 5 Denio, 435; Chaplin v. Brown (Iowa), 12 Law. Rep. Ann., 428; 9 Am. and Eng. Encyc. of Law, 894, 895; 3 Id., 882; "Trusts," by Wm. W. Cook, 53 Fed. Rep., 446.

GAINES, CHIEF JUSTICE.—We concur in the conclusions of the Court of Civil Appeals in this case, except in one particular; and in view of the well considered opinion of that court, we deem it unnecessary to discuss any of the questions involved except that upon which we differ.

We think the contract between the plaintiffs in error, Houck & Dieter and Howley and Schloss, shows upon its face a combination such as is prohibited by the act to define trusts, etc., approved March 30, 1889.   For the reasons given by the Court of Civil Appeals, we also

agree with them in holding that the act is not in violation of the Constitution. It follows, that the trial court erred in not instructing the jury that the combination was unlawful, and that Houck & Dieter could not recover of the plaintiff, on their cross-action, for a breach of a contract the performance of which would have aided them in carrying out the unlawful enterprise.

It may be that the decisions of this court establish the proposition, that mere knowledge on the part of the seller that the goods sold are to be used for an unlawful purpose will not prevent his recovering their price. As we view the case before us, it is not necessary to decide that question. The contract between the brewing company and Houck & Dieter bound the company to sell to the latter, and to sell to no other dealer in the city of El Paso. It is clear, we think, that these stipulations were well calculated to aid Houck & Dieter and their associates in effecting the purpose of the unlawful combination. They gave the combination a monopoly of the sale in the city of El Paso of the product of the plaintiff's brewery, and materially assisted the parties to the illegal contract in carrying out their object of controlling the market for the sale of beer in bulk in that city. Therefore, in our opinion, the case of the plaintiff, if in fact its agent renewed its contract, knowing of the existence of the combination, is not that of a seller who merely knows that the subject of the sale may be used in the furtherance of an unlawful design; but it is that of one who sells under a contract which, by reasons of its special terms, is calculated materially to aid the purchasers in effecting that design. We are therefore of the opinion, that should it be proved upon another trial that plaintiff, through its agent duly authorized for that purpose, renewed the contract with Houck & Dieter, by which it bound itself to sell to them and to no other parties in El Paso, and that at the time such contract was renewed such agent knew of the existence of the unlawful combination between the defendants and their associates, Schloss and Howley, then we are of the opinion that the plaintiff should not recover. If, however, as claimed by the plaintiff, the agent had no authority to make such contract, and if after it was made, plaintiff, with a knowledge of the facts, did not ratify the act of its agent, then the plaintiff should recover.

It is a question, whether the alleged contract between the plaintiff and defendant was not itself prohibited by the Act of March 30, 1889. The act denounces combinations in restraint of trade, and makes no distinction between restrictions which are reasonable and those which are unreasonable. If it should be held, that the contract constituted a combination within the terms of the statute, if the transaction had been one wholly within the State, then we would have the further question, whether, it being a transaction of interstate commerce, the act could affect it. But so far as we now see, it is necessary to decide neither question.

The judgment of the District Court is reversed and the cause remanded. The plaintiffs in error will pay the costs of the appeal to the Court of Civil Appeals, and the defendant in error the costs of the writ of error.

*Reversed and remanded.*

Delivered April 18, 1895.